Kottmyer, J.
This matter is before the court on the defendants’ special motion to dismiss filed pursuant to G.L.c. 231, §59H and motion for partial summary judgment. For the reasons set forth below, both motions are DENIED and Counts Seven through Ten are DISMISSED.
BACKGROUND
Plaintiff Wigwam Associates, Inc. (“Wigwam”) is a Massachusetts corporation engaged in building and selling new homes on a tract of land known as Wigwam Estates located between Plantation Street and Wigwam Hill Drive in Worcester. The individual defendants are owners and/or residents or former residents of the Wigwam Estates development. Defendant Wigwam Estates Homeowners Association (“the Association”) is an unincorporated association formed by the individual defendants. On May 28, 1992, Wigwam filed the present action seeking damages for alleged slander, intentional interference with contractual relations, intentional interference with advantageous relationships, violations of the state civil rights statute and conspiracy.
In 1988, Wigwam, under the direction of its president, George N. Hayeck and its vice-president, George E. Hayeck, began to construct a 48-unit residential development known as Wigwam Estates on land owned by Wigwam off Plantation Street in Worcester. In order to proceed with the project, Wigwam received the consent of the Worcester Planning Board to construct an “approval not required” (“ANR”) development. SeeG.L.c. 41, §8 IP. The ANR designation meant that Wigwam was not required to file a subdivision plan with the Worcester Planning Board. As such, Wigwam was not required to construct a public way for which the Ciiy of Worcester would assume general maintenance and snow plowing responsibilities. Instead, Wigwam built a common driveway (per a Declaration of Easement) for vehicular and pedestrian traffic to and from the residences in the development. This common driveway has been the source of an ongoing dispute between the plaintiff and the defendants.
The defendants contend that the plaintiffs president and vice-president assured them that Wigwam would make modification to the common driveway in order to gain Ciiy of Worcester acceptance of it as a public way. See defendant’s answer and counterclaim (Count I-V). The plaintiff denies making such representations and contends that the Declaration of Easement makes it plain that Wigwam constructed the common driveway with no intention of converting it to a city street. The defendants petitioned the Worcester Planning Board to compel Wigwam to file a subdivision plan for the development. The Planning Board issued an order imposing various conditions which would have required Wigwam to make modifications to the common drive. Wigwam appealed to the Zoning Board of Appeals and eventually to the Land Court. In June, 1994, the Land Court ruled that the Planning Board acted beyond its power in imposing the conditions. See Wigwam Assocs., Inc. v. Ferguson, Land Court Misc. case No. 195524 (Cauchon, C.J.). (Exhibit T to Plaintiffs Opposition.) The City of Worcester conceded that the Planning Board acted beyond its power. See also Wigwam Assocs., Inc. v. City of Worcester Zoning Board of Appeals, Land Court Misc. Case No. 205424.
In its complaint, the plaintiff alleges that the individual plaintiffs, through the Association, have conspired to destroy the business and good reputation of the plaintiff and its principals. The plaintiff accuses the defendants of engaging in intentional behavior, including defamation and intentional interference with contractual and advantageous relationships, calculated to drive Wigwam out of business or to compel it to modify the common drive. In particular, the plaintiff alleges that the defendants continually “badmouthed” Wigwam and its principals to prospective buyers and others with whom Wigwam had contractual and business relationships, saying, among other things, that the developer was “no good,” “was *462 operating illegally,” “personally threatened me” and “should be out of business.” The plaintiff claims that the defendants placed “For Sale” signs in front of their homes not to advertise their actual availability for sale, but rather to put pressure on plaintiff by discouraging prospective buyers of the remaining Wigwam Hill lots. Finally, Wigwam maintains that the defendants conspired through the Association to further these goals and to violate the plaintiffs civil rights as guaranteed by G.L.c. 12, §§11H and 111. The defendants assert that they formed the Association for the purpose of paying for snow plowing and general maintenance of the common driveway on which their homes were situated.
A. THE SPECIAL MOTION TO DISMISS PURSUANT
TO G.L.c. 231, §59H: STANDARD OF REVIEW
The defendants have moved to dismiss the complaint pursuant to G.L.c. 231, §59H asserting that it is a so-called SLAPP suit (“strategic lawsuit against public participation”). They contend that Wigwam brought the complaint against them on account of their exercise of their right to petition the government, that their exercise of their rights was not devoid of any reasonable factual support or any arguable basis in law and they caused the plaintiff, Wigwam, no actual injury. Each of the individual defendants asserts by way of affidavit that to the extent he or she made any critical statements about the plaintiff, the statements were made at public meetings before governmental entities or to governmental officials for the purpose of converting the private drive into a public street. The plaintiff asserts that G.L.c. 231, §59H is inapplicable because plaintiff seeks redress for damage inflicted by statements made and acts performed by the defendants which did not involve the right to petition the government.
A party may bring a special motion to dismiss in any case in which it asserts that the civil claims, counterclaims, or cross claims against it are based on its “exercise of its right of petition under the Constitution of the United States or of the Commonwealth.” G.L.c. 231, §59H (added by St. 1994, c. 283, §l).[2]The state defines “a party’s exercise of its right of petition” as
any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.
Id. The standard of review under G.L.c. 231, §59H is unlike that employed when a party moves for entry of judgment on the pleadings (Mass.R.Civ.P. 12(c)), for dismissal for failure to state a claim upon which relief can be granted (Mass.R.Civ.P. 12(b)(6)), or for summary judgment (Mass.R.Civ.P. 56).[3] When a party moves for dismissal under c. 231, §59H, the court must grant the special motion, unless the nonmoving party shows that:
(1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law; and
(2) the moving party’s acts caused actual injury to the responding party.
Id. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based. Id.
Although the defendants assert that Wigwam brought the suit against them because they exercised their right to petition the government, the special motion to dismiss under G.L.c. 231, §59H is not applicable to this case. The plaintiff seeks redress for alleged statements made and actions performed outside the context of petitioning the government. Obviously, oral or written statements made before or submitted to the Worcester Planning Board, the Worcester Zoning Board of Appeals or the Land Court do fall within the protection of the statute. But the statements complained of in this case were not made before or submitted to any governmental or judicial entity. Further, they were not reasonably likely to encourage consideration or review of the issue by a public entity or to enlist public participation in an effort to effect such consideration. For example, it is alleged that each of the defendants posted “For Sale” signs in their front yards for the sole purpose of putting pressure on Wigwam to modify the common drive by discouraging prospective home buyers from purchasing homes from Wigwam. Affidavits submitted by the plaintiff assert that defendant Kenneth McBride admitted that the posting of the “For Sale” signs was done “in spite” to harm the plaintiff. Two other homeowners state in their affidavits that Mr. McBride stated that he and other Association members would continue to try to shut down the builder “through whatever means necessary” until the builder did what they wanted done. A subcontractor states that he was warned by one of the defendants not to leave materials at the site overnight because they “would disappear.” Obviously, such conduct, even if it encompassed statements directed at achieving the same goals as those sought to be achieved before a governmental entity or judicial entity, cannot be considered statements made in the course of petitioning the government as defined by §59H or as statements “reasonably likely” to encour *463 age such review or to enlist public participation in securing such review. Cf. “Memorandum of Decision and Order on Plaintiffs Special Motion to Dismiss Counterclaim,” Thomson v. Town of Andover, Civil Action No. 93-1716 (Essex County) (July, 1995). On the contrary, the allegations, if proved, would support a finding that the defendants engaged in a form of “self-help” attempting to obtain from plaintiff through economic coercion the relief which they had unsuccessfully sought from governmental entities and, if unsuccessful in doing so, to drive the plaintiff out of business.
In conclusion, because the plaintiff alleges conduct which does not constitute the exercise of the right to petition as defined by G.L.c. 231, §59H, the motion to dismiss is denied.
B. THE MOTION FOR SUMMARY JUDGMENT 1. STANDARD OF REVIEW
Summary Judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The existence of disputed facts is consequential only if those facts have a material bearing on the disposition of the case. Norwood v. Adams-Russell Co., 401 Mass. 677, 683 (1988). A party in a civil action moving for summary judgment on a claim on which the opposing party will have the burden of proof at trial is entitled to summary judgment if it demonstrates by reference to the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “(T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment." LaLonde v. Eissner, 405 Mass. 207, 209 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
For the purposes of the summary judgment motion, the court views the facts in the light most favorable to the nonmoving party, taking all the facts set forth in it supporting affidavits as true. G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991).
In the present case, the plaintiff has submitted evidence from which, if proved, it could be inferred that the defendants engaged in a joint venture to force the plaintiff to modify the driveway or alternatively “to shut down” Wigwam by whatever means necessary. As joint venturers each is liable to third persons for the acts of his fellow joint venturers within the purpose and scope of the joint venture. Bell v. Mazza, 394 Mass. 176, 184 (1985). Accordingly, in ruling in the motion for summaryjudgment, the alleged acts of each individual defendant will be imputed to the others.
2. COUNT ONE — DEFAMATION
Plaintiff alleges that the defendants made defamatory statements about Wigwam. To assert a cause of action for slander, the oral form of defamation, the plaintiff must show:
(1) a defamatory statement concerning another;
(2) published to a third party;
(3) with fault amounting to at least negligence on the part of the person or persons making the statement;
(4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the making of the statement.
Restatement (Second) of Torts §558 (1979). Summary judgment will only be appropriate if the alleged statements are not actionably defamatory.[4]
Statements of opinion are constitutionally protected and are not actionable defamation. Friedman v. Boston Broadcasters, Inc., 402 Mass. 376, 379 (1988), citing King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987). Accordingly, a “pure” opinion or one based on disclosed or assumed nondefamatory facts is not actionable “no matter how unjustified and unreasonable the opinion may be or how derogatory it is.” Pritsker v. Brudnoy, 389 Mass. 776, 778 (1983) (finding statement by restaurant critic that restaurant owners were “pigs” pure opinion). However, mixed opinions are actionable “if the comment is reasonably understood as implying the assertion of the existence of undisclosed facts about the plaintiff that must be defamatory in character in order to justify the opinion.” Id., quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974).
In determining whether the alleged statements of the defendants constitute opinion or assertions of fact, the court must examine the statement in its totality in the context in which it was uttered, consider all the words used, not merely a particular phrase or sentence, give weight to cautionary terms used by the person publishing the statement and consider all of the circumstances surrounding the statement, including the medium by which the statement was disseminated and the audience to which it was published. Aldoupolis v. Globe Newspaper Co., 398 Mass. 731, 734 (1986), citing Myers v. Boston Magazine Co., 380 Mass. 336, 341 (1980).
The plaintiff relies on statements allegedly made concerning Wigwam and its principals by certain of the defendants at homeowners’ meetings, to potential home buyers and to at least one subcontractor. The alleged statements include “the builder personally threatened me,” the development was an “illegal subdivision,”[5] the developer was “operating illegally,” the *464 builder “could not be trusted” and never paid his bills, and the builder misrepresented the driveway and the paving. Because these statements may constitute either factual assertions or, depending on the context, mixed opinions, summary judgment is denied as to Count One.
3.COUNT TWO — INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
The plaintiff asserts that the defendants interfered with contractual relationships between Wigwam and third parties. The tort of interference with contractual relations involves the undoing of a business relationship bound by contract. Chemawa Country Golf, Inc. v. Wnuk 9 Mass.App.Ct. 506, 509 (1980). In an action for intentional interference with contractual relations, the plaintiff must prove:
(1) he had a contract with a third party;
(2) the defendant knowingly induced the third party to break that contract;
(3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and
(4) the plaintiff was harmed by the defendant’s actions.
G.S. Enters., Inc., supra at 272; United Truck Leasing Corp. v. Geltman 406 Mass. 811, 812-17 (1990).
The plaintiff asserts that the defendants interfered with Wigwam’s contractual relations with potential home buyers, other developers and a realtor. A purchase and sale agreement signed by both parties constitutes a binding contract. Yiakas v. Savoy, 26 Mass.App.Ct. 310, 313 (1988). The plaintiff has demonstrated the existence of purchase and sale agreements for the sale of two homes and of contracts with a developer (Boston West Modular Homes) to purchase the entire development.
The defendants deny that they purposefully acted in any way that would interfere with the plaintiffs contractual relationships. Viewing the facts in the light most favorable to the plaintiff, there is substantial evidence from which a jury could reasonably infer that the defendants acted with an improper motive. Further there is evidence that the defendants’ actions caused Boston West and other prospective buyers to refuse to complete the purchase of property at Wigwam Estates. The motion for summary judgment is denied as to Count Two.
4.COUNT THREE — INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIP
In order to establish a claim for intentional interference with advantageous business relationships, a plaintiff must show:
(1) a business relationship or contemplated contract of economic benefit;
2) the defendant’s knowledge of such relationship [or contract);
(3) the defendant’s intentional and malicious interference with it; [and]
(4) the plaintiffs loss of advantage directly resulting from the defendant’s conduct.
Elm Medical Laboratory, Inc. v. RKO Gen., Inc.. 403 Mass. 779, 787 (1989), quoting Comey v. Hill, 387 Mass. 11, 19 (1982).
Summary judgment is also denied as to the plaintiffs claim of intentional interference with advantageous business relations. Those Offers to Purchase with which the defendants allegedly interfered constitute “contemplated contract[s[.” Viewing the facts in the light most favorable to plaintiff, there are material issues of fact which preclude summary judgment.
5.COUNTS FOUR AND FIVE: CONSPIRACY
In Counts Four and Five respectively, plaintiff claims that defendant conspired to interfere with advantageous and contractual relations. A claim for conspiracy coupled with a tort requires evidence of the underlying tort in addition to the elements of conspiracy. As set forth above, the plaintiff has adduced sufficient evidence of the commission of the underlying torts to defeat defendants’ motion for summary judgment.[6] To establish a claim for conspiracy, the plaintiff must show “a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another.” Therrien v. Hamilton, 849 F.Supp. 110, 115 (D. Mass. 1994). “The plaintiff need not show that such an agreement was express; a conspiracy may be implied from the circumstances.” Hunt v. Weatherbee, 626 F.Supp. 1097, 1107 (D. Mass. 1986), citing Dickerson v. U.S. Steel Corp., 439 F.Supp. 55, 67 (E.D. Pa. 1977).
There is sufficient evidence from which a jury could infer that the defendants agreed to harm the plaintiff. For example, there is evidence that the defendants posted “For Sale” signs with no intention of selling their homes. Aff. of Judith Dagg ¶ 15 (“Mr. McBride told me that none of the homes were for sale, but the signs were to intimidate the builder”). Additionally, the defendants expressed a common goal “to try to shut down the builder, through whatever means necessary, until the builder does whatever they want done.” Aff. of Anthony Olson ¶14.
Thus, summary judgment is denied as to the claims of conspiracy set forth in Counts Four and Five.
6.COUNTS SIX: CONSPIRACY TO DEPRIVE OF CIVIL RIGHTS
In Count Six, plaintiff alleges that defendants conspired to deprive it of its civil rights. In order to establish a violation of G.L.c. 12, §11H, the plaintiff must show that the defendants “interfered or attempted to interfere with the exercise or employment of rights secured by the United States Constitution, or *465 laws of the Commonwealth through threat, intimidation or coercion.” Deas v. Dempsey, 403 Mass. 468, 470 (1988). Secured rights are those “created by, arising under or dependent upon . . . rather than fully protected” by the Constitution or the laws of the United States. Bell v. Mazza, 394 Mass. 176, 182 (1985).
Although the terms of G.L.c. 12, §11H are entitled to a liberal construction, recovery under it should be limited to situations where the deprivation occurred by the defendant’s “threats, intimidation or coercion.” Deas v. Dempsey, 403 Mass. 468, 470 (1988). “Threats” involve “the intentional exertion of pressure to make another fearful or apprehensive of injury or harm”; “(i)ntimidation involves putting in fear for the purpose of compelling or deterring conduct.” Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474 (1994). “Coercion” is “the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.” Id. quoting Webster’s New International Dictionary 519 (2d ed. 1959).
The plaintiff claims that the defendants conspired to interfere with its constitutional right to use its land. “The right to enjoy life and liberty and to acquire, possess and protect property are secured to every one under the Constitution of Massachusetts and under the Constitution of the United States. These guarantees include the right to own land and to use and improve it according to the owner’s conceptions of pleasure, comfort or profit, and the exercise of liberty and the pursuit of happiness.” Bell, supra at 178; Brett v. Building Commr. of Brookline, 250 Mass. 73, 77 (1924) (basing claim on general right to use property); compare K. Hovnanian at Taunton, Inc. v. Taunton, 37 Mass.App.Ct. 639, 646-47 (1994) (holding there is no statutory right to favorable exercise of municipal discretion for approving subdivision plan).
There is sufficient evidence that the defendants agreed to threaten, intimidate or coerce the plaintiff and interfere with its property rights to defeat a motion for summary judgment. The facts of this case closely parallel those in Bell v. Mazza, where the plaintiff sued the defendants under G.L.c. 12, §11H for interfering with its right to use and improve its property. In that case the defendants formed an association and made threats to prevent the plaintiffs from constructing a tennis court on their property. Id. at 179. One defendant stated "that he had ‘connections’ and would do ‘anything,’ ‘any cost,’ to prevent the [plaintiffs’] construction of any tennis court.” Id. Additionally, that same defendant threatened to sue the plaintiffs’ blasting contractor and called the police and fire departments several times concerning the construction of the tennis court. Id. at 180. The Supreme Judicial Court held that these facts were sufficient to withstand a motion to dismiss.
Similarly, in this case, the plaintiff has adduced evidence described above which, if believed, would support a finding that the defendants conspired to intimidate it in connection with its use of its property. The motion for summary judgment on Count Six is denied.
F. COUNTS EIGHT, NINE, and TEN
Counts Eight, Nine, and Ten assert claims against Wigwam Estates Homeowners Association. “[A]n unincorporated voluntary association is not a separate entity and cannot be made a party defendant . . .” McCormack v. Labor Relations Comm’n, 358 Mass. 682, 685 (1971), citing Donahue v. Kenney, 327 Mass. 409, 412 (1951). Cf. Mass.R.Civ.P. 23. 2. Because Wigwam Estates Homeowners Association is an unincorporated voluntary association, all claims against it must be dismissed.
ORDER
For the foregoing reasons, it is hereby ORDERED that:
1. Defendants’ special motion to dismiss pursuant to G.L.c. 231, §59H is denied.
2. Defendants’ motion for partial summary judgment is denied.
3. Count Seven is dismissed.
4. Counts Eight, Nine and Ten which purport to assert the claims against Wigwam Association Homeowners Association are dismissed.

Section 2 of St. 1994, c. 283, provides that G.L.c. 231, §59H applies to all cases that had not been fully adjudicated on March 29, 1995, the effective date of the act, and that notwithstanding the provisions of St. 1994, c.283, §1, a party was authorized to file a special motion to dismiss within sixty days of the effective date of the Act.

When the Legislature passed St. 1994, c. 283, it did so over the Governor’s veto. It rejected an amendment proposed by the Governor which would have entitled a party asserting that the claims against it were based on its exercise of its right of petition to file a special motion to dismiss for judgment on the pleadings, for failure to state a claim upon which relief could be granted, or for summary judgment. See Message from the Governor, 1994 House. Doc. No. 5570 at 3.

The Supreme Judicial Court favors summary judgment in defamation cases. Theran v. Rokoff, 413 Mass. 590, 591-92 (1992); King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987).

If a jury finds that these statements about tile plaintiffs business prejudice plaintiff in its profession, or probably tend to do so, they may be actionable per se. Cavarnos v. Kokkinakis, 338 Mass. 355, 357 (1959).

Count Seven entitled “Conspiracy to Deprive the Plaintiff of the Benefit of Contracts” simply restates the cause of action alleged in Count Four and is therefore dismissed.